## COMMISSIONER OF REVENUE *vs.* BOARD OF ASSESSORS OF SANDWICH.

Suffolk.   February 7, 1989. — July 6, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Commissioner of Revenue. Taxation*, Appellate Tax Board: findings; State owned lands; Value; Review by Supreme Judicial Court. *Practice, Civil*, Presumptions and burden of proof. *Evidence*, Value, Relevancy and materiality.

In a proceeding before the Appellate Tax Board challenging the Commissioner of Revenue's valuation of certain State owned lands, the board's finding on remand did not comply with this court's instruction that the board examine the Commissioner's Statewide valuation program and determine whether it was reasonably designed to achieve the objectives of G. L. c. 58, § 13. [309-310]

The record of a proceeding before the Appellate Tax Board challenging the Commissioner of Revenue's valuation of certain State owned lands was inadequate to support a finding by the board that a lack of written procedures, guidelines, standards, and checklists was fatal to the Commissioner's method of valuation under G. L. c. 58, § 13. [310-311]

The record of a proceeding before the Appellate Tax Board challenging the Commissioner of Revenue's valuation of certain State owned lands was inadequate to support a finding by the board that the method chosen by the Commissioner to value the lands under G. L. c. 58, § 13, could not and did not produce values reasonably approximate to fair cash value. [311-312]

In a proceeding before the Appellate Tax Board challenging the Commissioner of Revenue's valuation of certain State owned lands, valuations of State owned lands by the Commissioner's office in other years, while not conclusive, were relevant to the board's determination. [312]

In a proceeding before the Appellate Tax Board challenging the Commissioner of Revenue's valuation of certain State owned lands, evidence as to the Commissioner's method of valuation for 1985, which included written guidelines and forms, was properly admitted in evidence, but was not, by itself, evidence that the Commissioner's method of valuation for 1980, which did not include such materials, was deficient under the mandate of G. L. c. 58, § 13. [313]

In a proceeding before the Appellate Tax Board challenging the Commissioner of Revenue's valuation of certain State owned lands, the Commissioner's decreased valuation of a large tract of land in the face of an appreciation of over forty per cent for other land in the same town was not, in the circumstances, arbitrary on its face. [313-314]

In a proceeding before the Appellate Tax Board challenging the Commissioner of Revenue's valuation of certain State owned lands in which the board adopted neither the assessors' proposed valuation of the lands nor the Commissioner's valuation, there was substantial evidence to support the board's determination of value, namely, the testimony and accompanying documents from the Commissioner's own staff and from qualified appraisers for both parties. [314]

In a proceeding before the Appellate Tax Board challenging the valuation of certain State owned lands in the town of Sandwich by the Commissioner of Revenue, there was substantial evidence to support the board's determination that the Commissioner's Statewide method of valuation was not properly implemented in Sandwich in the year 1980. [314-315]


Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert A. Carleo, Jr.*, for the Commissioner of Revenue.

*Elizabeth A. Lane* for the Board of Assessors of Sandwich.

LIACOS, C.J. This is an appeal by the Commissioner of Revenue (Commissioner) from a decision of the Appellate Tax Board (board). The board held that the Commissioner failed to comply with G. L. c. 58, § 13, as amended through St. 1978, c. 514, §§ 43, 44, in establishing a method of valuing State owned lands as of January 1, 1980, and in applying that method to the State owned lands in the town of Sandwich.

This is the third occasion on which the parties have appeared before this court. Initially, the Commissioner had determined that the value of State owned lands located in Sandwich was $12,433,000. The board of assessors of Sandwich (assessors) appealed that decision, but the appeal was dismissed as untimely. We thus affirmed. *Assessors of Sandwich* v. *Commissioner of Revenue*, 382 Mass. 689 (1981) (*Sandwich I*). The Legislature subsequently enacted St. 1981, c. 351, § 131, pursuant to which the assessors again appeared before the board. The board reversed the Commissioner and substituted its determination that the value of State owned lands in Sandwich was $29,208,000. See *Assessors of Sandwich* v. *Commissioner of Revenue*, 393 Mass. 580 (1984) (*Sandwich*

*II*).[1] We reversed the board's decision and remanded because the board had not followed the requirements of G. L. c. 58, § 13. See *id.* The issue now before us is whether the board followed our mandate on remand. We conclude that it did not.

1. *The board's noncompliance with Sandwich II.* In *Sandwich II, supra* at 587, we stated that, "[i]n light of [§ 13's] objective, it would be illogical to conclude that the Legislature intended the board to make a de novo determination of land values on appeal, without regard for the method of valuation used by the Commissioner throughout the State." We defined the board's duty under § 13 to be to determine whether the method used by the Commissioner to value State owned lands "(1) can be applied equally to each town where there are eligible State owned lands and (2) will produce values reasonably approximate to fair cash value. . . . If the procedure adopted by the Commissioner is not arbitrary or capricious, it should be upheld." *Id.* at 588. We cautioned that, "[o]nly if the board concludes that the Commissioner failed to comply with § 13 should it make an independent determination of value, and then only in accordance with § 13." *Id.* at 586. We review the board's decision to determine whether it complied with these guidelines.

On remand from *Sandwich II,* the board ultimately concluded that "the Commissioner's 1980 procedure for valuing [State owned lands] in Sandwich was arbitrary and capricious and was not reasonably designed, in theory or in practice, to achieve the objectives of Section 13." The board reaffirmed its initial determination of the fair cash value of State owned lands in Sandwich. The board listed three subsidiary findings in support of its ultimate conclusion. We review each in turn.

a. The board found that "the method applied in Sandwich in 1980 was not the same method applied in other adjacent towns." The board's duty was to examine the Commissioner's "*Statewide* valuation program" to determine whether it "is reasonably designed to achieve the statute's objectives" (em-

---

[1] We need not repeat the factual and statutory analysis of that appeal as it is fully set forth in *Sandwich II, supra.*

phasis added). *Sandwich II, supra* at 588. Instead, the board examined the individual valuation method applied by the Commissioner's appraiser for Sandwich, which, the board found, "obviously deviates" from the Commissioner's program Statewide. Thus, the board's finding tells us nothing about the Commissioner's Statewide program.

b. The board also found that "the lack of written procedures, guidelines, standards or checklists left the [Commissioner's] appraisers to apply their own subjective standards." This finding is, in essence, a presumption that oral guidelines are inadequate. We stated, in a related context, that "§ 13 authorizes the Commissioner to obtain 'oral or written information from any officer or agent of the commonwealth or of any county or town therein, and from any other inhabitant thereof.' This provision reflects a recognition by the Legislature of the impracticability of requiring the Commissioner to conduct his inquiry in the same detail or with as much personal involvement as reflected in the assessors' expert's study." *Sandwich II, supra* at 588. Similarly, the mere fact that the 1980 guidelines were oral rather than written is not sufficient as a basis to invalidate the Commissioner's methodology. Additionally, the record does not contain the evidence on which the board appears to have relied. That evidence is a document that reportedly compares the amount of money reimbursed to municipalities by the Commonwealth in 1980 and 1975, in both of which years the Commissioner had given oral instructions only.

Ordinarily, the burden would be on the Commissioner to replicate this document in the record and to illustrate that the board's findings are not supported by substantial evidence. *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 602 (1986), and cases cited. *Vespa* v. *State Tax Comm'n*, 373 Mass. 857, 858 (1977). However, as we explain below, the board's meager references to data from this document are insufficient, both because they cannot sustain meaningful appellate review and because they suggest that the board again evaluated the Statewide program on the basis of Sandwich and

its neighboring towns alone.[2] See *Alstores Realty Corp.* v. *Assessors of Peabody*, 391 Mass. 60, 71 (1984) (board must be sufficiently specific as to subsidiary facts, calculations, and reasons for conclusions that appellate review is meaningful).

The board stated, in conclusory fashion, that the document shows "extremely wide percentage changes in 1980 reimbursements," compared to the 1975 reimbursements, which "indicate[ ] that valuation methods were not applied equally in the 253 municipalities." The board referred to data relative to only four of these municipalities. The board stated, "It is important to note [that] the Towns of Mashpee, Falmouth, Bourne and Sandwich all have acreage in the Military Reservation known as Otis Air Force Base and Camp Edwards. The land in all four towns is quite comparable in topography and soil conditions. Yet, Sandwich was the only town where the acreage in the Military Reservation was reduced in value in 1980." On the basis of a single aberration, the board could not conclude that the Commissioner's method of valuing State owned lands could not be applied equally in each town. On this record, we cannot credit the board's ruling that the lack of written procedures, guidelines, standards, and checklists was fatal to the Commissioner's method of Statewide valuation.

c. We are left with the board's third finding, that the Commissioner's method "could not and did not produce values reasonably approximate to fair cash value." Once again, the record contains little information about what the method did produce by way of cash values, or why those values were inadequate, outside of Sandwich. In the absence of specific references, at least, to any other data before the board, we cannot perform our functions of reviewing the board's action for compliance with the legal standards of *Sandwich II* and for sufficient evidentiary support. *Alstores Realty Corp.* v. *Asses-*

---

[2] We repeat that the board should make an independent determination whether "the method of valuation employed by the Commissioner *throughout the State* complies with § 13" and whether that method "will produce values reasonably approximate to fair cash value" before it reaches the issue "whether the Commissioner complied with that method in the particular town." *Sandwich II, supra* at 588-589 (emphasis supplied).

*sors of Peabody, supra.* Therefore, we remand yet again so that the board may make new findings and rulings, on the basis of the evidence already before it and any additional evidence that it determines to be relevant and necessary in accordance with our opinions.

2. *Other issues.* For the sake of efficiency, we address certain of the parties' remaining concerns at this point.

a. *Relevance of data from other years.* The Commissioner contests the relevance of the 1975 and 1985 valuations, by his office, of State owned lands. Relevant evidence is that which "render[s] the desired inference more probable than it would be without the evidence." *Green v. Richmond,* 369 Mass. 47, 59 (1975). Cf. *Commonwealth v. Booker,* 386 Mass. 466, 469 (1982). Sufficiently large and numerous discrepancies in the values for 1975, 1980, and 1985 would suggest that the Commissioner's method of valuation for at least one of those years could not "be applied equally to each town" or could not "produce values reasonably approximate to fair cash value." *Sandwich II, supra* at 588. Such discrepancies therefore are relevant, but they are not conclusive. The board must determine whether it is the 1980 valuation method that is at fault or the valuation method for the other years, or whether the value of the land at issue actually has changed as indicated. The burden of proof before the board is on the assessors. *Almeida Bus Lines, Inc. v. Department of Pub. Utils.,* 348 Mass. 331, 342 (1965). Furthermore, the board should bear in mind our caution in *Sandwich II, supra* at 588: "[I]n the context of a Statewide valuation program, in light of the limited resources of the Commissioner, it may be necessary to 'conced[e] perfection in result, in favor of a process which is orderly, expeditious, and reliable.' *Newton v. Commissioner of Revenue,* 384 Mass. 115, 122 (1981)."[3]

---

[3] The board also admitted the 1975 valuations "in light of . . . testimony that [the Commissioner's] appraisers were instructed to refer to the 1975 appraisal file for each city or town and compare their 1980 valuation with the 1975 values." We agree that this aspect of the Commissioner's 1980 method of valuation is relevant. For example, it bears on the assessors' assertion that the Commissioner's 1980 oral instructions could not be applied

b. *Relevance of methodology from other years.* The board compared the Commissioner's 1985 methodology, which included written guidelines and forms, with the 1980 methodology. The board concluded that "[a]dherence to the written guidelines and the proper completion of the Municipal Data Sheets would . . . establish a procedure reasonably designed to achieve the statute's objective and one which could be applied equally to each municipality. Conversely, it is apparent that the absence of these Municipal Data Sheets and written guidelines in 1980 left too much to the subjective discretion of each . . . appraiser [for the Commissioner] and did not prescribe a procedure which could be applied equally to each town." The board must not, of course, reject the 1980 methodology simply because the 1985 methodology is better, in the board's opinion. *Sandwich II, supra* at 586-587.

The board appears to have placed the cart before the horse by concluding, without first referring to data showing discrepancies Statewide, that the absence of written procedures and forms in 1980 left too much to "subjective discretion" and resulted in a methodology that could not be "applied equally to each town." See *Alstores Realty Corp.* v. *Assessors of Peabody*, 391 Mass. 60, 71 (1984) (need for subsidiary findings supported by substantial evidence). Thus, the evidence as to the 1985 methodology was properly admitted, but is not, by itself, evidence that the 1980 methodology was deficient under the statutory mandate.

c. *Decreased valuation of large tract in Sandwich.* The assessors argue that the decreased value of State owned land in Sandwich in the face of an appreciation of over forty per cent for other land in Sandwich is "arbitrary on its face." We disagree. The vast majority of the State owned land in Sandwich was a single large tract, the so-called Military Reservation. The board appears to have found that the method of valuing large tracts of land in "Sandwich and Barnstable County" was at variance with the Statewide method in 1975, and that in

uniformly Statewide, notwithstanding the Commissioner's review of his appraisers for consistency and notwithstanding his instruction to the appraisers to refer to the 1975 valuations.

1980 these methods were reconciled. For this reason, or because of some other perceived flaw in the 1975 valuation, the Commissioner may have changed the methodology as to large tracts for 1980. The Commissioner is entitled to correct perceived errors, and in fact the Commissioner explained that the decrease in the value of State owned lands in Sandwich was due to a "changed valuation method." Of course, the board may disbelieve the Commissioner's explanation. "It was open to the board to accept the testimony of the [assessors'] witness as the more convincing." *Assessors of Weymouth* v. *Tammy Brook Co.*, 368 Mass. 810, 811 (1975).

d. *The board's determination of $29,208,000 value.* The assessors maintain that there is substantial evidence to support the board's determination that the value of State owned lands in Sandwich was $29,208,000 in 1980. We address this issue because the board may yet determine, under *Sandwich II*, that the Commissioner's 1980 methodology did not comport with § 13, and that the board may substitute its own valuation. See G. L. c. 58, § 14. The board adopted neither the assessors' proposed valuation of $36,500,000 nor the Commissioner's valuation of $12,433,100. "The board did not accept the actual computations of any witness and was not obliged to do so." *Assessors of Lynnfield* v. *New England Oyster House, Inc.*, 362 Mass. 696, 700 (1972). There was substantial evidence to support the board's determination of value, in particular the testimony and accompanying documents from the Commissioner's own staff and from qualified appraisers for both parties.

e. *The 1980 appraisal of Sandwich.* The board determined that the Commissioner's Statewide methodology was not properly implemented in Sandwich in 1980. There is substantial evidence to support this finding. William Drohan, the appraiser assigned to value State owned lands in Sandwich and neighboring municipalities in 1980, testified as to the procedures he followed during the one day he apparently spent valuing the land in Sandwich. The board found that his worksheets were "inconsistent with and do not compare to the [forms] which he submitted." The board also found, based on Drohan's specific admissions, that he did not follow the methodology estab-

lished by the Commissioner. We have discovered no evidence in the record to contradict these findings, and there is substantial evidence to support them. There was no error on this count.

3. *Conclusion.* On remand, the board must determine, as we explained in *Sandwich II, supra* at 588, whether the Commissioner's *Statewide* program "(1) can be applied equally to each town where there are eligible State owned lands and (2) will produce values reasonably approximate to fair cash value. . . . If the procedure adopted by the Commissioner is not arbitrary or capricious, it should be upheld." If the board determines that the Commissioner's Statewide program in 1980 fails to meet the above standard, the board may substitute its value of $29,208,000 for the Commissioner's 1980 value for State owned lands in Sandwich. Conversely, if the board determines that the Commissioner's Statewide program in 1980 does meet the above standard, it should apply that program's methodology to Sandwich, in place of the methodology erroneously applied by the Commissioner's 1980 appraiser for Sandwich.

We remand this case to the board for further proceedings consistent with this opinion.

*So ordered.*